Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Jeremy J. Kelley
Dan Fruchter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 1 3 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

EILEEN MARIE LOMBARDI,

Defendant.

Case No: 2:24-CR-00156-MKD

Pretrial Diversion Agreement

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Dan Fruchter and Jeremy Kelley Assistant United States Attorneys, as well as Defendant, Eileen Marie Lombardi ("Defendant"), and Defendant's counsel, Steve Roberts, agree to the following Pretrial Diversion Agreement (the "Agreement"):

## I. Overview and Information

1. On January 24, 2024, the United States Attorney's Office for the Eastern District of Washington notified Defendant that the Drug Enforcement Agency was investigating Defendant for, *inter alia*, Acquiring or Obtaining a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception, or Subterfuge, in violation of 21 U.S.C. § 843(a)(3).

PRETRIAL DIVERSION AGREEMENT - 1

2.    Defendant waives indictment and consents to the filing of a one-count Information (the Information) in the United States District Court for the Eastern District of Washington, charging Defendant with one count of Acquiring or Obtaining a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception, or Subterfuge, in connection with the Covered Conduct, as set forth below.

3.    Defendant stipulates and agrees that Defendant did in fact violate 21 U.S.C. § 843(a)(3) and that the United States could prove Defendant's guilt beyond a reasonable doubt. Defendant wishes to accept responsibility for this conduct. Accordingly, Defendant stipulates and agrees to the following facts, referred to herein as the "Covered Conduct":

Beginning in November 2021, Defendant was employed by Mid-Valley Hospital and Clinic ("Mid-Valley") as a Registered Nurse. Defendant's employment authorized her to have access to all Controlled Substances in Mid-Valley's inpatient and outpatient services and the Emergency Department. Defendant had previously diverted Controlled Substances at a former employer hospital in 2012. Lombardi had, in 2018, while working for that previous employer hospital, successfully completed the Washington Health Professional Services program offered through the Washington Board of Nursing, which offers nurses with a substance use disorder "an opportunity to safely provide patient care through the monitoring of nurses in a manner that safeguards the public throughout the stages of their recovery and program participation." *See* "Washington Health Professional Services (WHPS)," *available at:* https://nursing.wa.gov/support-practicing-nurses/support-substance-use.

Shortly after she began working at Mid-Valley, Defendant began to obtain and acquire Dilaudid, which is a brand name for hydromorphone HCl ("Dilaudid"). Dilaudid is a Schedule II controlled substance. Initially, Defendant diverted Dilaudid through a process known as "wastage;" that is, pursuant to routine orders for a patient, Defendant dispensed Dilaudid contained in a 1 mg or 2 mg vial from automated medication dispensing systems for a *bona fide* patient. Then, Defendant withdrew the

PRETRIAL DIVERSION AGREEMENT - 2

prescribed dose of the Dilaudid contained in the dispensed vial, *e.g.*, 0.5 mg, into a syringe and set that syringe aside for the patient, took another syringe from her pocket, withdrew the remaining Dilaudid from the vial (which, under Mid-Valley policy, was supposed to be disposed of, or "wasted," by emptying the vial into the sink) and put that syringe in her pocket. Defendant then took the diverted Dilaudid home at the end of her shift.

Later in her employment, Defendant began to enter overrides into the automated medication dispensing system to obtain access to additional Dilaudid, which she then diverted to her own personal use. In entering the overrides, Defendant used the names of real patients, many of whom had already been discharged from the hospital. While a nurse might typically note in the patient record the reason for an override—*e.g.*, "patient complains of increased pain"— Defendant entered no notes in the patient record to explain her overrides. Mid-Valley typically had a cumulative total of fewer than one override per week from all nurses; however, the number of overrides entered when Defendant was working was consistently significantly higher than those entered by other staff. Defendant also often volunteered to work extra shifts, which Defendant admitted later was so she could have more access to obtain and acquire Dilaudid. Defendant admitted to Drug Enforcement Agency (DEA) investigators that she diverted 2-3 units of 1 mg/ml Dilaudid every shift she worked at Mid-Valley. Defendant admitted that she diverted about half the drugs she stole through the use of overrides and half through wastage thefts of amounts designated as waste after administration of Dilaudid to *bona fide* patients.

Mid-Valley's own investigation showed that between November 2021 and October 2023 Defendant obtained and acquired Dilaudid through fraudulent and deceptive overrides totaling 898 mg of Dilaudid. Additionally, Mid-Valley's investigation showed that Defendant obtained and acquired 469 mg of Dilaudid through fraudulent and deceptive medication wastage. In total, Mid-Valley's investigation determined between November 2021 and October 2023 Defendant obtained and

PRETRIAL DIVERSION AGREEMENT - 3

acquired, through misrepresentation, fraud, forgery, deception, and subterfuge, approximately 1,367 mg of Dilaudid.

Defendant voluntarily surrendered her DEA Certificate of Registration No. ML6465151 on or about November 6, 2024. On or about July 15, 2024, Defendant agreed to an Order with the Washington State Board of Nursing in Master Case Nos. M2024-335 and M2024-336. In the Order, Defendant agreed to participate in the Washington Health Professional Services (WHPS) monitoring program for a period of between one (1) and five (5) years. The length of the program will be at the sole discretion of the program. Defendant is further Ordered not to have direct access to dispense, administer, count or waste controlled substances or any other medications or to have unsupervised prescribing authority until approved under the WHPS program.

4. On authority from the Attorney General of the United States, through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, prosecution in the Eastern District of Washington for the Covered Conduct shall be deferred for 60 months. This 60-month period begins on the date this Agreement is signed by both parties and accepted by the Court. If Defendant fulfills her obligation to successfully complete the WHPS monitoring program as described in Paragraph 8, *infra*, prior to the end of the 60-month period, the Agreement may be accelerated to terminate as early as November 6, 2025.

5. The United States and Defendant stipulate and agree that the Court will maintain jurisdiction over this matter and that the Court shall be the final arbiter as to: (1) whether a party breached this Agreement, and if so; (2) the appropriate remedy, which may include either terminating the Agreement or modifying its terms.

## II. Terms

Defendant stipulates and agrees to the following terms:

6. **Waiver of Constitutional Rights.** Defendant, by entering this Agreement, agrees to waive certain constitutional rights including (1) the right to a jury trial; (2) the right to see, hear, and question witnesses; (3) the right to compel witnesses

PRETRIAL DIVERSION AGREEMENT - 4

to testify; (4) the right to remain silent at trial; and (5) the right to testify at trial. Defendant knowingly and voluntarily waives the above rights.

7. **Supervision.** Defendant stipulates and agrees to be supervised by the U.S. Probation Office during this 60-month period. Further, Defendant understands the following:

   a. Defendant shall not violate any federal, state, or local law. This term does not apply to minor civil infractions such as speeding.

   b. If Defendant is arrested or has any official contact with law enforcement in a civil or criminal investigative capacity, Defendant shall notify Defendant's supervising pretrial diversion officer within two business days.

   c. Defendant shall live within the jurisdiction of the Eastern District of Washington. If Defendant seeks to reside outside the District, Defendant shall notify and seek the approval of Defendant's supervising pretrial diversion officer so that appropriate arrangements in light of the Agreement can be made.

   d. Defendant shall maintain employment in a lawful occupation. When out of work, Defendant shall notify Defendant's supervising pretrial diversion officer. In the event that Defendant becomes self-employed, Defendant shall provide evidence of such self-employment.

   e. Defendant shall report to Defendant's supervising pretrial diversion officer as directed by the Court or U.S. Probation. Any failure to abide by the reporting requirements as established by the Court or U.S. Probation shall be deemed a violation of the Agreement.

   f. Defendant shall not possess, control, consume, and/or use any illegal controlled substance, including marijuana, nor own, possess, or have access to any firearm, ammunition, destructive device, or dangerous weapon (*i.e.*, anything that was designed, or was modified for, the

PRETRIAL DIVERSION AGREEMENT - 5

specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers), unless it has been disclosed to, and approved by, U.S. Probation.

    g. Defendant must undergo a substance abuse evaluation and, if indicated by a licensed/certified treatment provider, enter into and successfully complete an approved substance abuse treatment program, which could include inpatient treatment and aftercare upon further order of the court. Defendant must contribute to the cost of treatment according to her ability to pay. Defendant must allow full reciprocal disclosure between the supervising officer and treatment provider.

    h. Defendant shall submit to drug testing as ordered by U.S. Probation.

    i. Defendant will allow the probation officer to visit at any time at Defendant's home or elsewhere and will permit the probation officer to take any items prohibited by the conditions of supervision that he or she observes in plain view.

    j. Defendant shall abide by any other conditions imposed by Defendant's supervising pretrial diversion officer.

8. **State of Washington Board of Nursing Agreed Order.** Defendant agrees to fully comply with the requirements of the Agreed Order entered against her in the State of Washington Board Agreed Order in Master Case Nos. M2024-335 and M2024-336, filed on or about July 15, 2024. Specifically, Defendant agrees to comply with the following requirements, as set out in the Agreed Order:

    a. Defendant shall comply with the WHPS monitoring program. Participation will be at Defendant's expense, until the WHPS monitoring program determines that participation in the program is no longer necessary. The length of participation in the WHPS monitoring program will be at the sole discretion of the program. Initial monitoring contracts may have a duration of one (1) to five (5) years and will

PRETRIAL DIVERSION AGREEMENT - 6

require biological fluid or tissue screenings as deemed necessary by the WHPS monitoring program. Defendant may be required to appear before the Substance Use Disorder Review Panel. Defendant shall sign a release that authorizes the WHPS monitoring program to provide the monitoring records and reports about Defendant's participation in the WHPS monitoring program to the Board of Nursing or its designee.

b. Defendant shall not have direct access to dispense, administer, count or waste controlled substances or any other medications such as benzodiazepines, until re-evaluated as address in the WHPS monitoring contract.

c. Defendant shall notify WHPS of current employment, any plans to change Defendant's work status, duties, or place of employment for prior approval as addressed in the WHPS monitoring contract.

d. Defendant shall not have unsupervised prescriptive authority until re-evaluated as addressed in the WHPS monitoring contract.

Defendant stipulates and agrees that any failure to comply with the WHPS program, terminating the program without permissions, or being expelled from the program shall constitute a violation of the Agreed Order and this Diversion Agreement.

9. **DEA Registration.** Defendant stipulates and agrees that she will not seek reinstatement of her surrendered DEA Certificate of Registration No. ML6465151, or seek to apply for any other DEA Certificate of Registration, for a period of two years from the date she surrendered her Certificate of Registration, November 6, 2023. Defendant stipulates, agrees, and understands that after November 6, 2025, she may seek reinstatement of her surrendered DEA Certificate of Registration, but that reinstatement shall be entirely at the discretion of the DEA.

10. **Tolling.** Defendant stipulates and agrees to toll the running of all applicable statutes of limitations and any time-based defenses for the Covered Conduct. This tolling shall run from the date the Agreement is signed by all parties until the

PRETRIAL DIVERSION AGREEMENT - 7

Agreement expires or is terminated by the Court. Defendant stipulates and agrees that the Agreement's tolling provision does not abridge or curtail the applicable statute of limitations in any way, but rather extends the applicable statute of limitations by the period of time that the Agreement is in effect.

Defendant further expressly waives indictment and all rights to a speedy indictment and/or trial pursuant to the Sixth Amendment of the United States Constitution, 18 US.C. § 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Eastern District of Washington for the period during which this Agreement is in effect.

11. **Breach.** If the Court, after a hearing, terminates the Agreement based on a breach by Defendant, the United States may resume its prosecution against Defendant as to the charge(s) under investigation, and any additional charges.

12. **Admissibility of the Agreement in Prosecution.** In the event that the Court terminates the Agreement based on a breach by Defendant, Defendant stipulates and agrees that the Agreement and Defendant's admissions contained therein shall be admissible against Defendant at any trial, sentencing, or other related proceeding.

The United States stipulates and agrees to the following:

13. **Deferred Prosecution and Dismissal.** The United States stipulates and agrees to defer prosecution of the above-captioned matter for a period of 60 months. When and if Defendant satisfies all the requirements of the Agreement (including any modifications), the United States stipulates that it will seek dismissal with prejudice of the Information filed against Defendant pursuant to this Agreement. Except in the event of a violation by Defendant of any term of this Agreement, the United States will bring no additional charges against Defendant relating to Defendant's conduct as described in the Information and the Covered Conduct set forth above. This agreement does not provide any protection against prosecution for any crimes except as set forth above. Defendant and the United States understand that the Court must approve deferral under the Speedy Trial Act, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court

PRETRIAL DIVERSION AGREEMENT - 8

decline to defer prosecution for any reason: (1) both the United States and Defendant are released from any obligation imposed upon them by this Agreement; and (2) this Agreement shall be null and void, except for the tolling provisions set forth herein.

### III.  Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    11/8/2024
Jeremy J. Kelley              Date
Assistant U.S. Attorney

_____ for    11/8/2024
Dan Fruchter                  Date
Assistant U.S. Attorney

I have read the Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. I understand the terms and conditions of the Agreement and agree to comply with them.

_E. Lombardi_  _11/8/24_
Eileen Marie Lombardi                 Date
Defendant

_[signature]_  _11/8/2024_
Steve Roberts                         Date
Attorney for Defendant

Approved without passing judgment on the merits or wisdom of this diversion.

_[signature]_  _11/13/2024_
                                      Date
United States District Judge

PRETRIAL DIVERSION AGREEMENT - 10